UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CORTANA GLOBAL LLC**<br>900 Biscayne Blvd., Apt 3112<br>Miami, FL 33132<br><br>          *Plaintiff,*<br>v.<br><br>**DIVERSE GROWTH PARTNERS,**<br>867 Boylston Street, Suite 500<br>Boston, MA 02166<br><br>**PRIVATE MARKETS CAPITAL LLC,**<br>250 Massachusetts Avenue NW<br>Washington, D.C. 20001<br><br>**DEYLON LOWE,**<br>867 Boylston Street, Suite 500<br>Boston, MA 02166<br><br>**ESBE JALLOH**<br>**a/k/a Solomon Jalloh,**<br>7238 Muncaster Mill Road, Unit 131<br>Derwood, MD 20855<br><br>          *Defendants.* | Case No.: ----------------------<br><br>**EMERGENCY INJUNCTIVE**<br>**RELIEF REQUESTED** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | LEGAL STANDARD | 6 |
| IV. | ARGUMENT | 7 |
| | a. Each of the Four Factors Governing Preliminary Injunctive Relief Weigh in Favor of Enjoining Defendants from Transferring the Cryptocurrency. | 7 |
| | b. Cortana is Likely to Succeed on the Merits of its Challenge. | 8 |
| | c. Cortana Will Suffer Irreparable Injury if a Temporary Restraining Order is Not Entered | 10 |
| | d. The Balance of Hardships Weighs Decidedly in Favor of Cortana and Against Defendants. | 11 |
| | e. The Public Interest Warrants Enjoining Defendants from Continuing to Perpetrate Fraud. | 12 |
| V. | CONCLUSION | 12 |
| | CERTIFICATE OF SERVICE | 14 |

# TABLE OF AUTHORITIES

Page(s)

Cases

*Achagzai v. Broad. Bd. of Governors*,
No. 14-cv-768 (RDM), 2016 WL 471274 (D.D.C. Feb. 8, 2016) ............................................. 10

*AIDS Vaccine Advoc. Coal. v. United States Dep't of State*,
766 F. Supp. 3d 74 (D.D.C.), *enforced* 768 F. Supp. 3d 1 (D.D.C. 2025) .................................. 6

*Beattie v. Barnhart*,
663 F. Supp. 2d 5 (D.D.C. 2009) .............................................................................................. 8

*CityFed Fin. Corp. v. Off. of Thrift Supervision*,
58 F.3d 738 (D.C. Cir. 1995) .................................................................................................... 7

*Climate United Fund v. Citibank, N.A.*,
775 F. Supp. 3d 335 (D.D.C. 2025) .................................................................................... 7, 11

*CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*,
325 A.3d 1235 (D.C. 2024) ....................................................................................................... 8

*Costa v. Bazron*,
456 F. Supp. 3d 126 (D.D.C. 2020) .......................................................................................... 6

*Council on Am.-Islamic Rels. v. Gaubatz*,
667 F. Supp. 2d 67 (D.D.C. 2009) .......................................................................................... 12

*Dist. Title v. Warren*,
181 F. Supp. 3d 16 (D.D.C. 2014),
*aff'd sub nom*, Title v. Warren, 612 F. App'x 5 (D.C. Cir. 2015) ............................................. 12

*Jubilant DraxImage Inc. v. United States Int'l Trade Comm'n*,
396 F. Supp. 3d 113 (D.D.C. 2019) .................................................................................... 7, 10

*M.G.U. v. Nielsen*,
316 F. Supp. 3d 518 (D.D.C. 2018) .......................................................................................... 6

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Wertz*,
298 F.Supp.2d 27 (D.D.C.2002) ............................................................................................. 12

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
763 F. Supp. 3d 36 (D.D.C. 2025) ............................................................................................ 8

*Nat'l Mining Ass'n v. Jackson*,
768 F. Supp. 2d 34 (2011) ....................................................................................................... 10

*Nat'l Org. for Women, Wash. D.C. Chapter v. Soc. Sec. Admin. of Dep't of Health and Human Servs. et al.*,
736 F.2d 727 (D.C.Cir.1984) .................................................................................................... 8

*Phillips v. Sager*,
276 F. 625 (D.C. Cir. 1921) ...................................................................................................... 6

*Tex. Children's Hosp. v. Burwell*,
76 F. Supp. 3d 224 (D.D.C. 2014) .......................................................................................... 10

*TikTok Inc. v. Trump*,
507 F. Supp. 3d 92 (D.D.C. 2020) .......................................................................................... 11

*United States v. Sum of $70,990,605*,
991 F. Supp. 2d 154 (D.D.C. 2013) ........................................................................................ 10

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390, 101 S. Ct. 1830 (1981)......................................................................................6
*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)......................................................................................................................7
*Wis. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) ...............................................................................................10

**Statutes**

D.C. Code § 22-3211(b) ..................................................................................................................9

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Cortana Global LLC ("Cortana"), by counsel, respectfully states as follows in support of its *ex parte* motion for temporary restraining order against Defendants Diverse Growth Partners ("DGP"), Private Markets Capital LLC ("PMC"), Deylon Lowe ("Lowe"), and Esbe Jalloh ("Jalloh") (collectively the "Defendants"):[1]

## I. PRELIMINARY STATEMENT

As cryptocurrency continues to rise in popularity, malicious actors are developing sophisticated schemes to manipulate and misappropriate others' cryptocurrency assets. Plaintiff, Cortana, is one such victim of a scheme by Defendants that has caused Cortana to lose over eight million USDT. USDT is a "stablecoin," or cryptocurrency designed to hold its value relative to the U.S. Dollar. Defendants DGP and PMC represented themselves as established cryptocurrency traders, leading Cortana to transfer millions of USDT to wallet addresses under Defendants' control. Cortana has since been unable to access or obtain a return of its funds and has engaged forensic blockchain tracing that conclusively identified where the transactions are being held (J.Maile Decl., ¶¶ 12-21).

Cortana thus seeks immediate injunctive relief to preserve its misappropriated cryptocurrency assets and prevent their disbursement while it pursues legal remedies against Defendants. Specifically, Cortana seeks an *ex parte* temporary restraining order, as Defendants have demonstrated a clear ability to rapidly move and obscure Cortana's stolen cryptocurrency assets. Without immediate relief, the traceable funds may be withdrawn, further laundered, or rendered permanently unrecoverable, resulting in irreparable harm. Providing notice of this motion

---

[1] Plaintiff hereby incorporates by reference the allegations of the Complaint (cited herein as "Compl.") and the Declarations of Anthony Kerkar, Cameron Kerkar, and Justin Maile of CipherBlade LLC (cited herein as A./C. Kerkar Decl. and J. Maile Decl.).

1

would likely result in Defendants moving the assets further, thereby eliminating the possibility of recovery.

## II.    FACTUAL BACKGROUND

Defendants engaged in a fraudulent scheme to misappropriate cryptocurrency by falsely representing themselves as legitimate private investment firms and peer-to-peer ("P2P") sellers of digital assets. On or about September 8, 2025, Plaintiffs were introduced to DGP under the pretense of entering into a P2P transaction for the purchase of Bitcoin ("BTC") (Compl. ¶ 2). Cortana received a Client Information Sheet from DGP that allegedly included information about DGP's structure and compliance with applicable laws. DGP also represented that it had a list of "Verified Sellers" who were pre-screened through DGP's know-your-customer ("KYC") processes to ensure that sales could be safely brokered (Compl. ¶ 33), and that DGP Founder and Managing Director Defendant Lowe was a shareholder in Utila, a reputable trading platform for cryptocurrency (Compl. ¶ 34).

Believing that DGP was legitimate, Cortana met with DGP about a potential P2P BTC sale agreement. DGP first required that Cortana transfer assets to the Utila platform as a prerequisite for DGP locating a seller of BTC to transact with Cortana. DGP then recommended PMC from a list of anonymous sellers as one "Verified Seller" that Cortana should transact with, even supplying a Client Information Sheet on PMC (Compl. ¶¶ 41, 45). Although Plaintiff expressed concern about proceeding with PMC—including because the purchase required the use of JUSD, purportedly a new stablecoin[2] tied to the U.S. dollar in which PMC had an ownership interest—DGP assured Plaintiffs of the transaction's legitimacy (Compl. ¶ 46, A./C. Kerkar Decl., ¶ 5). Relying on DGP's

---

[2] Stablecoin is a type of cryptocurrency designed to maintain a stable value so that it can be consistently used as a currency exchange.

2

assurances of the legitimacy of both PMC and JUSD, Cortana signed an agreement with DGP, Lowe, and PMC on the morning of September 19, 2025 (the "Agreement") (Compl. ¶ 49, Ex. 1).

The Agreement clearly specified the terms of the transaction between Cortana and PMC, which included a series of transfers of USDT to JUSD in exchange for BTC. The Agreement further stated that if a party failed to perform under the terms of the Agreement, that party would be in breach and owe a five-million-dollar non-performance penalty (Compl. ¶ 54, Ex. 1), which provided further assurances to Cortana of the Agreement's legitimacy. The Agreement was for the sale of up to 1000 BTC, priced at the trading price at the time of Buyer's purchase of JUSD. The transaction followed a set procedure: (1) Buyer purchased USDT; (2) Buyer swapped at least $120,000 USDT to JUSD and provided confirmation; (3) Seller delivered BTC equal to the JUSD amount; and (4) Buyer transferred the JUSD to the Seller. PMC further promised that BTC would be delivered within 45 minutes of Buyer's confirmed JUSD purchase. The Agreement expressly defines both DGP and PMC as the "SELLER" and Cortana as the Buyer (Compl. ¶¶ 49 – 51, Ex. 1). As the partner of the "Verified Seller," DGP handled all communication with PMC, with whom Cortana had no direct contact (A./C. Kerkar. Decl., ¶ 12, Ex. 1).

After signing the Agreement, Cortana began its trades, pursuant to the Agreement's terms. While Cortana's first and second transfers of funds were largely successful, DGP and PMC failed to convert Cortana's 4,920,000 USDT to JUSD swap to the equivalent amount of BTC (Compl., ¶¶ 61–82). In addition, DGP and PMC failed to convert any of Cortana's 7,000,000 USDT to JUSD swap to BTC (Compl. ¶¶ 83–88). Cortana immediately sent proof that it had fulfilled its side of the Agreement as to the 7,000,000 USDT transfer, swapping 7,000,000 in USDT to JUSD from one of PMC's purported JUSD liquidity wallets. However, DGP and PMC failed to complete

the trade with the transfer of any BTC whatsoever, leaving Cortana with millions in JUSD, which could not be converted to any other useable cryptocurrency (Compl., ¶ 88).

After Defendants refused to reverse the transfer and provide Cortana their funds back in equivalent USDT, Cortana engaged the trading platform they were using, Utila, as well as the JUSD provider for more information on how to reverse the transaction (Compl. ¶¶ 91, 93). It was during this outreach that Cortana discovered that DGP had misrepresented Lowe's relationship with Utila to Cortana (Compl. ¶ 91). Cortana also discovered that the JUSD they received from PMC's purported liquidity wallet could not be traded (Compl. ¶ 93). On September 23, 2025, Cortana filed a complaint with the Internet Crime Complaint Center ("IC3"), a hub run by the Federal Bureau of Investigation to report cyber-crimes (Compl. ¶ 97).

In addition to filing a complaint with the IC3, following DGP's theft, Cortana engaged Kinetic Global (a private intelligence company focused on financial due diligence and global investigations) and CipherBlade, a Blockchain Investigation Agency ("Cipher"), each with extensive expertise in investigating cryptocurrency related fraud, to investigate the circumstances surrounding Cortana's stolen digital assets (Compl. ¶ 98, J. Maile Decl., ¶6). Cipher determined that JUSD is an unstable token, which was propped up just long enough to provide the appearance of having value and is used to convince victims that they are receiving an asset in return for providing legitimate digital currency (Compl. ¶¶ 15, 108-111, J.Maile Decl., ¶¶ 28-29). Cipher also discovered evidence suggesting that PMC's Chief Portfolio Manager, Esbe Jalloh, was actually Solomon Jalloh, who was convicted of eight counts of wire fraud in California in 2017 (Compl. ¶ 115).

Cipher used blockchain analytics tools to identify the wallets used to receive, consolidate, and disperse the misappropriated funds (J.Maile Decl., ¶¶ 8-9). The analysis confirmed that

4

Defendants employed deliberate obfuscation techniques, including fragmentation, swap protocols, and cross-chain transfers to conceal the origin and movement of Plaintiff's cryptocurrency to make it more difficult to identify, trace, and recover the transferred funds (Compl. ¶ 114, J.Maile Decl., ¶¶ 23-27). Cipher was able to successfully trace the stolen assets to the below deposit addresses (akin to a bank account number) hosted by known centralized exchanges but acknowledges that there may be other accounts not yet known (Compl. ¶¶ 122-123, J. Maile Decl., ¶22).

| **Deposit Address** | **Exchange** |
|---|---|
| 0x278e1d17c8a43309b010cadaaa4f6487e3212dde | Binance |
| 0x6db54f51cf2b0351506a69b4d1ce4b8327e7c412 | Binance |
| 0x56e4752ba43feafbabfc154884f68a63b50b3f45 | Binance |
| 0x260a1cfa8d1e50063fd3c7875b4c1963df9c3905 | Coinbase |
| 0xf7904ca8192cffe4c2a27204ca23e140c3fc8b4c | Coinbase |
| 0x8ff7992ece4f95b7130438870185f5c04f13270e | Coinex |
| 0x6a88ece679b8380149b0c983eadb35cfd8a0ec18 | HTX |
| 0xa02b3dab09dda91b0eb67efa15d643657ed37acc | HTX |
| 0xd96a8df2078fb5a18154393a0a8b2b1f5c1e6d6b | HTX |
| bc1q4wu5e575gav9ajpx8gfuprzy29h4096hqp6v6d | Revolut |
| 0x5a0b9f881b766f06ad5f28f2de1c03ca2210be71 | HitBTC |
| 0xa01b72b6612f2c40339032ab315bfaad02436bc2 | Private Wallet |
| 0x021de99f7be63b5129cfe7d11c73de43137fe994 | Private Wallet |

Cipher's findings indicate that Defendants deliberately moved the stolen cryptocurrency through a series of wallets they controlled to obscure the funds' origins and hinder recovery (J.Maile Decl., ¶ 23). There is a high likelihood that Defendants will continue to move or dissipate

5

the assets if they become aware of this action, thereby eliminating the possibility of recovery (J.Maile Decl., ¶¶ 30–31). Ultimately, Defendants fraudulently received $8,123,093.05 USDT from Cortana (Compl. ¶ 96).

### III. <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 65, a temporary restraining order, unlike a preliminary injunction, may be issued without notice if facts are alleged that "clearly show that immediate and irreparable injury ... will result to the movant before the adverse party can be hard in opposition;" and an attorney certifies why notice should not be required.[3] "The purpose of a temporary restraining order is to preserve the status quo for a limited period of time until the Court has an opportunity to pass on the merits of the demand for a preliminary injunction." *M.G.U. v. Nielsen*, 316 F. Supp. 3d 518, 520 (D.D.C. 2018); *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). Cortana will be filing a motion for a preliminary injunction once a TRO is in place. This will allow Defendants to be notified of the pending action without the existing likelihood that they will further launder the funds at issue during the pendency of the litigation.

A motion for a temporary restraining order "is analyzed using the same factors applicable to preliminary injunctive relief." *Costa v. Bazron*, 456 F. Supp. 3d 126, 133 (D.D.C. 2020) (internal quotation omitted); *AIDS Vaccine Advoc. Coal. v. United States Dep't of State*, 766 F. Supp. 3d 74, 79 (D.D.C.), *enforced*, 768 F. Supp. 3d 1 (D.D.C. 2025) ("A plaintiff seeking a temporary

---

[3] While we note that there is precedent for simultaneously pursuing a preliminary injunction, due to the relief requested, a separate preliminary injunction will be filed with notice to the Defendants. *Phillips v. Sager*, 276 F. 625, 627 (D.C. Cir. 1921) (holding a preliminary injunction may be granted on an *ex parte* basis when "the function of the preliminary injunction is merely to maintain the status quo until final decree, where comparatively great injury may result from the withholding, and comparatively little can flow from the granting, of such injunction.").

6

restraining order must make the same showing as he would if seeking a preliminary injunction."). "A court also considers the 'underlying purpose' of a TRO — 'preserving the status quo and preventing irreparable harm' until it has the opportunity to rule on the merits." *Climate United Fund v. Citibank, N.A.*, 775 F. Supp. 3d 335, 344 (D.D.C. 2025) (quotation omitted). To secure the temporary and preliminary injunctive relief that they seek, Plaintiff must establish that (1) they are likely to succeed on the merits of their claims against Defendants; (2) they are likely to suffer irreparable harm in the absence of temporary and preliminary relief; (3) the balance of equities tips in their favor, and (4) injunctive relief is in the public interest. *Jubilant DraxImage Inc. v. United States Int'l Trade Comm'n*, 396 F. Supp. 3d 113, 119 (D.D.C. 2019) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).

## IV. ARGUMENT

### a. Each of the Four Factors Governing Preliminary Injunctive Relief Weigh in Favor of Enjoining Defendants from Transferring the Cryptocurrency.

In this case, each of the four factors articulated by the Supreme Court in *Winter* and subsequently applied by this Court weighs in favor of requiring Defendant's digital wallets to be frozen while Cortana pursues its claims. The first factor weighs in favor of Cortana because, by the very terms of the parties' Agreement, DGP, Lowe, PMC, and Jalloh are in breach of contract (Compl. ¶ 54, Ex. 1). The second factor also weighs in Cortana's favor given the failure to freeze these accounts will likely result in Cortana's cryptocurrency being permanently obfuscated in accounts that are not traceable or recoverable (J.Maile Decl., ¶¶ 31–32). The third and fourth factors similarly weigh against Defendants since Cortana and Cortana's investors are victims of their illegal schemes and should not be permitted to successfully keep the currency they scammed from Cortana (Compl. ¶ 19).

b.  **Cortana is Likely to Succeed on the Merits of its Challenge.**

Plaintiff is likely to succeed on the merits of its claims. When analyzing this factor, "the court only needs to find that Plaintiff[] [is] likely to succeed on one [claim] in order for this factor to weigh in favor of a TRO." *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, 763 F. Supp. 3d 36, 53 (D.D.C. 2025); *Beattie v. Barnhart*, 663 F. Supp. 2d 5, 9 (D.D.C. 2009) ("Assessing the likelihood of success on the merits 'does not involve a final determination of the merits, but rather the exercise of sound judicial discretion on the need for interim relief.'") (quoting *Nat'l Org. for Women, Wash. D.C. Chapter v. Soc. Sec. Admin. of Dep't of Health and Human Servs. et al.*, 736 F.2d 727, 733 (D.C.Cir.1984)). Plaintiff brings eight counts in its Complaint, with one count, unjust enrichment, being pled in the alternative to breach of contract. Based on the above facts and supporting declarations, Plaintiff respectfully asserts that it will succeed on all its causes of action. Clearly, however, Defendants have breached the signed agreement between the parties and committed civil theft.

To prove breach of contract, plaintiff must show "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1245 (D.C. 2024). Here, each element is clearly met. Indeed, on September 19, 2025, Cortana and DGP, in partnership with PMC, entered into the Agreement setting forth the terms and procedures by which DGP and Cortana would trade cryptocurrency (Compl. ¶¶ 49 – 60, Ex. 1). Pursuant to the Agreement, Cortana would purchase BTC from PMC with funds from Cortana that had been transferred from USDT into JUSD. Specifically, the Agreement provides: (1) Cortana purchases USDT on Utila, a legitimate enterprise trading platform; (2) Cortana engages with PMC via a Google Meet link; (3) Cortana performs a swap of USDT to JUSD; (4) PMC transfers BTC to the

Cortana's wallet and send confirmation; and (5) Cortana sends JUSD for the equivalent amount of BTC. (Compl. ¶ 57, Ex. 1).

Unfortunately, while Cortana sent the equivalent of $12,477,144.28 USD to be swapped into JUSD over the course of three separate tranches as specified in the Agreement, Defendants failed to convert the JUSD to the equivalent amount of BTC. (Compl. ¶ 88, A./C. Kerkar Decl., ¶13). In fact, to date, Defendants have maintained Cortana's funds, causing Cortana to lose over eight million USDT (Compl. ¶ 96, A./C. Kerkar Decl., ¶ 14).

In addition to its claim for breach of contract, Cortana is likely to succeed in proving its civil theft claim against Defendants. Under D.C. law, civil theft is committed when a person "wrongfully obtains" the property of another with the intent to "deprive the other of a right to the property." D.C. Code § 22-3211(b). Here, Defendants induced Cortana to convert USDT—a valid crypto currency—to JUSD. According to Cipher, a cryptocurrency security expert, Defendants misrepresented the value of JUSD to convince Cortana that it could be used as a valuable asset in exchange for cryptocurrency (Compl. ¶¶ 108-113). Defendants engaged in a sophisticated scheme, which included forging KYC documents and information on "Verified Sellers" and completing a series of smaller transactions with Cortana, before deceiving Cortana out of over eight million USDT. DGP misrepresented Defendant Lowe's connection to Utila, a legitimate cryptocurrency trading platform, to further bolster DGP's reputation as an organization with reputable traders (Compl. ¶¶ 33 – 34, 91). Based on these facts, Cortana is likely to succeed on each of its causes of action but focuses on breach of contract and civil theft as two especially egregious violations in this current civil action.

### c. Cortana Will Suffer Irreparable Injury if a Temporary Restraining Order is Not Entered

"A showing that irreparable injury is 'likely' is the *sine qua non* for obtaining a preliminary injunction — it is what justifies the extraordinary remedy of granting relief before the parties have had the opportunity fully to develop the evidence and fully to present their respective cases." *DraxImage*, 396 F. Supp. 3d at 123 – 124 (quoting *Achagzai v. Broad. Bd. of Governors*, No. 14-cv-768 (RDM), 2016 WL 471274, at *3 (D.D.C. Feb. 8, 2016)). "The movant must show that the alleged harm will directly result from the action which the movant seeks to enjoin." *United States v. Sum of $70,990,605*, 991 F. Supp. 2d 154, 162 (D.D.C. 2013) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). In other words, the movant must demonstrate that it faces an "injury that is 'both certain and great; it must be actual and not theoretical,' and of a nature 'of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Tex. Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 242 (D.D.C. 2014) (quoting *Wis. Gas Co.*, 758 F.2d at 674). While, as a general rule, economic loss alone does not constitute irreparable injury, there are exceptions: "[e]conomic losses may be sufficient where 'the loss threatens the very existence of the movant's business,'" *Id.* (quoting *Wis. Gas Co.*, 758 F.2d at 674). "If a plaintiff has shown that financial losses are certain, imminent, and unrecoverable, then the imposition of a preliminary injunction is appropriate and necessary." *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 53 (2011).

Here, Cortana sent the equivalent of $12,477,144.28 USD in USDT to Defendants over the course of three tranches. Defendants, however, failed to send an equivalent amount of funds back to Cortana in BTC. (Compl. ¶¶ 64, 73, 81, 88, A./C. Kerkar Decl., ¶ 13). As a consequence, Defendants have maintained Cortana's funds and Cortana has lost access to over eight million USDT (Compl. ¶ 88, A./C. Kerkar Decl., ¶ 14). Furthermore, Cipher reported that Defendants have

used obfuscation techniques to make it more difficult for Cortana to trace and recover its funds (Compl. ¶ 114, Decl., J.Maile, ¶¶ 23-27). If Cortana pursues legal action without a TRO in place, Defendants will continue to complete cryptocurrency transactions until Cortana's funds are depleted and untraceable. *Id.* As explained in the Complaint, this fraud has crippled Cortana's trading capabilities and its investors, leaving them without the use of over $8 million in assets needed for daily operations and growth, while enabling these Defendants to simultaneously victimize others beyond Cortana in the investment space. (Compl. ¶ 19).

A TRO is the least restrictive way to preserve the status quo while Cortana pursues both criminal and civil redress for the Defendants' scheme. Without a TRO, Defendants will continue to complete transactions that will ultimately launder the misappropriated funds into wallets and locations that are either untraceable or stored in locations that will not comply with law enforcement efforts to return funds (J.Maile Decl., ¶¶ 30–32).

### d. The Balance of Hardships Weighs Decidedly in Favor of Cortana and Against Defendants.

The irreparable harm faced by Cortana far outweighs any harm that Defendants might claim to face if it remains free to transfer Cortana's funds out of their Deposit Addresses/digital wallets. This Court has previously held that that a party "cannot suffer harm from an injunction that merely ends an unlawful practice." *Climate United Fund*, 775 F. Supp. 3d at 351 (quoting *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 115 (D.D.C. 2020)). Stated differently, a TRO preventing a defendant from utilizing funds they wrongfully received does not cause harm to the defendant. Here, Defendants breached a contract and asserted misrepresentations to obtain Cortana's funds. In response, Cortana seeks a TRO limited to the funds identified by Cipher. The TRO, if entered, is not a total freeze of all of Defendants' accounts but rather a targeted approach that incorporates the asset tracing work completed by Cipher (Compl. ¶¶ 101–107). If Defendants' conduct is

permitted to proceed unchecked, Cortana stands to lose over eight million USDT, and Defendants maintain the ability to hide funds through a series of illicit transactions.

e. **The Public Interest Warrants Enjoining Defendants from Continuing to Perpetrate Fraud.**

This Court has previously held that "it is in the interest of the public to ensure that money is not unlawfully withheld from its rightful owner." *Dist. Title v. Warren*, 181 F. Supp. 3d 16, 29 (D.D.C. 2014), *aff'd sub nom. Title v. Warren*, 612 F. App'x 5 (D.C. Cir. 2015). In addition, this Court has affirmed that "the public interested is served . . . [by] enforcing valid contractual provisions..." *Council on Am.-Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 80 (D.D.C. 2009) (affirming that *ex parte* TROs are appropriate where notice to the adverse party is impossible or the adverse party cannot be located or identified) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Wertz*, 298 F.Supp.2d 27, 34 (D.D.C.2002)). Under both these principles, Defendants' digital wallets should be frozen so that Cortana's funds remain recoverable, and so that Cortana can pursue relief for Defendants breach of contract and other illegal acts. The public interest is better served when criminals are not permitted to hide their illegal funds after receiving notice of a civil proceeding against them, and victims are not inadvertently penalized for pursuing remedies through the courts rather than pursuing self-help recovery efforts.

## V. CONCLUSION

Defendants should not be allowed the time to hide their ill-gotten gains while Plaintiff pursues legal remedies for relief. A temporary restraining order is the only way for the status quo to be maintained while Cortana pursues legal remedies following Defendants' illicit actions. Accordingly, Plaintiff respectfully requests that its motion for an *ex parte* temporary restraining order be granted.

Dated:  October 8, 2025

Respectfully submitted,

**FOLEY & LARDNER LLP**

By: /s/ *Olivia S. Singelmann*
Counsel

Olivia S. Singelmann (D.C. Bar No. 1016299)
Telephone: (202) 295-4146
Jack Korba (D.C. Bar No. 1010303)
Telephone: (202) 295-4110
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007

*Attorneys for Plaintiff Cortana Global LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th of October, 2025, I personally served a copy of the forgoing document to the Clerk of Court.

By: */s/ Jack Korba*
Counsel for Plaintiff