UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CORTANA GLOBAL LLC** )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>**DIVERSE GROWTH PARTNERS, PRIVATE** )<br>**MARKETS CAPITAL LLC, DELYON LOWE,** )<br>**ESBE JALLOH A/K/A SOLOMON JALLOH,** )<br>)<br>*Defendants*. ) | Case No.: 1:25-cv-3612-RCL |

### PLAINTIFF'S MOTION TO ENFORCE AMENDED SETTLEMENT AGREEMENT

Plaintiff Cortana Global LLC ("Plaintiff" or "Cortana") respectfully moves the Court to enforce the parties' confidential amended settlement agreement in this action (the "Amended Settlement Agreement"), and in support thereof, states:[1]

### INTRODUCTION

For the past three months, counsel for Cortana and counsel for Defendants Private Markets Capital ("PMC") and Esbe Jalloh a/k/a Solomon Jalloh ("Jalloh) have engaged in lengthy settlement negotiations in an effort to resolve the allegations contained in Cortana's Complaint filed on October 8, 2025, against Defendants PMC and Jalloh. Cortana and Defendants PMC and Jalloh (hereinafter the "Parties") executed an original confidential settlement agreement and release (the "Settlement Agreement") on November 28, 2025. *See* Exhibit 1. Defendants PMC and Jalloh failed to fulfill their obligations under the Settlement Agreement and breached that contract. Following further negotiations, the parties executed the Amendment Settlement

---

[1] Cortana also has filed a Motion to Provisionally Seal requesting permission to file the original settlement and Amended Settlement Agreement under provisional seal because both versions contain a confidentiality provision.

1

Agreement on January 6, 2026.  *See* Exhibit 2.  Defendants PMC and Jalloh have failed to fulfill their obligations under the Amendment Settlement Agreement and are in breach of that contract.  It is now clear that Defendants PMC and Jalloh are refusing to perform their obligations under the Amended Settlement Agreement.  For these reasons explained herein, Cortana submits that Court intervention is necessary and respectfully requests that the Court enforce the parties' Amended Settlement Agreement.

## **FACTUAL BACKGROUND**

On October 8, 2025, Cortana filed a complaint against Defendants PMC, Jalloh, and others alleging breach of contract, *inter alia*, arising from a fraudulent cryptocurrency investment and peer-to-peer trading scheme.  *See* ECF No. 1.  As alleged in the Complaint, Cortana transferred millions of dollars' worth of cryptocurrency to wallets purportedly controlled by the defendants in this case, a significant amount of which was never returned.  *See* Compl. ¶¶ 94–95.  The breach of contract alleged in this case resulted in a loss of digital assets by Cortana equivalent to $8,123,093.05.  *See* Compl. ¶ 96.

On November 28, 2025, after lengthy discussions, the parties confirmed their agreement to settle the action, subject to execution of the Settlement Agreement.  On the same date, the parties executed the binding Settlement Agreement by affixing their signatures to page 6 of the written contract.  The Settlement Agreement specified that Defendants PMC and Jalloh agreed to pay the equivalent total of $8,123,093.05 in exchange for a release from the claims alleged in the Complaint.  The Settlement Agreement contained a specified Payment Protocol by which Defendants PMC and Jalloh were to pay Cortana the agreed upon settlement amount as follows:

> 2. **Payment Protocol**.  Within one (1) business day following the execution of this Agreement, Settlement Defendants shall provide Plaintiff with a list of wallets on the TRO Appendix which Settlement Defendants have ownership of, proprietary interest or equitable interest in, or control over, as well as an

accounting of the total funds in each wallet (the "Accounting").  Within two (2) business days of the execution of this Agreement, and the provision of the Accounting by Settlement Defendants, the Parties shall file a consent motion to modify the TRO with respect to the Settlement Defendants and wallets owned and controlled by the Settlement Defendants with a Proposed Order attached directing the Exchanges to effectuate such release of assets. The language of the Proposed Order is attached here as Attachment A.  Within one (1) business day of the assets being unfrozen by the relevant exchange, financial institution, or cryptocurrency issuer, any USDT or BTC assets contained in the wallets listed in the Accounting ("Sum 1") shall be released to wallets designated by Plaintiffs in Attachment A. Also within one (1) business day of the assets being unfrozen by the relevant exchange, financial institution, or cryptocurrency issuer, Settlement Defendants shall initiate a transfer of the equivalent of $8,300,000 USD in JUSD ("Sum 2") to Polygon escrow wallet address(es) designated by the Parties in Attachment B to this agreement. The Parties agree that Settlement Defendants do not have any ownership of, proprietary or equitable interest in, or control over any of the assets, wallets, or accounts that remain enjoined as specified in the Proposed Order. Within one (1) business day of the receipt of Sum 2, the Settlement Defendants shall initiate effectuating swaps necessary to convert JUSD to USDT until the escrow wallets contain the equivalent of $8,123,093.05 USD (the Settlement Amount) in USDT, minus Sum 1 ("Sum 3"). At the close of each business day, the balance of the escrow wallets shall be transferred to wallets designated by Plaintiff in Attachment B to this agreement until the total of Sum 3 has been transferred to Plaintiff. Sum 3 shall be equivalent to the Settlement Payment defined above, minus Sum 1. Any remaining balance in the escrow wallets shall be returned to Settlement Defendants. Settlement Defendants shall have seven (7) business days from the time the assets are unfrozen to effectuate the Settlement Payment to Plaintiffs.

On November 28, 2025, Cortana filed a consent Motion to Modify Existing Temporary Restraining Order (TRO) in accordance with the terms of the Payment Protocol specified above. *See* ECF No. 32.  On December 3, 2025, Cortana filed a Supplemental Motion for Preliminary Injunction, *see* ECF No. 34, which the Court granted on December 4, 2025. *See* ECF No. 35.  This Order had the same effect as the proposed modification of the TRO, releasing Defendants PMC and Jalloh and the specified wallets from the TRO and Preliminary Injunction.  Counsel for Cortana was subsequently able to serve the Court's Order on the relevant cryptocurrency exchanges and confirm that the specified wallets had been unfrozen.

However, despite the fulfillment of Cortana's obligations, Defendants PMC and Jalloh failed to convert JUSD into USDT and failed to transfer USDT from the escrow wallets to the wallets designated by Cortana as specified in the Settlement Agreement. Counsel for Defendants PMC and Jalloh later explained that this was due to an issue with their clients' JUSD cryptocurrency holdings. Taking those representations at face value, Cortana reengaged in settlement negotiations with the understanding that Defendants PMC and Jalloh still intended to honor their agreement to ultimately settle in the amount of $8,123,093.05.

Following additional settlement discussions, on January 6, 2026, the parties agreed upon a new Payment Protocol that would result in the final settlement amount of $8,123,093.05. On January 7, 2026, the parties executed the binding Amended Settlement Agreement by affixing their signatures to page 2 of the written contract. The Amended Settlement Agreement specified that the terms of the original Settlement Agreement remained in full force and effect, but amended the Payment Protocol by which Defendants PMC and Jalloh were to pay Cortana the agreed upon settlement amount as follows:

> 2. **Payment Protocol**. Within one (1) business day following the execution of this Amended Confidential Settlement Agreement and Release ("Amended Settlement Agreement"), Settlement Defendants shall execute a smart contract attached herein as Attachment C to begin to initiate the transfer of a total 8,130,000 USDT to the Trust Wallet designated by the Plaintiff in Attachment D to this Amended Settlement Agreement. The transfers shall occur in daily tranches over the ten (10) days following the execution of this Amended Settlement Agreement until the Trust Wallet contains the equivalent of $8,123.093.05 USD (the "Settlement Amount") in USDT. ,Any remaining balance in the Trust Wallet that is above and beyond the Settlement Amount shall be returned to Settlement Defendants.

The smart[2] contract specified that the transfer to the Trust Wallet was to be in the form of USDT (ERC20). Although Defendants PMC and Jalloh apparently executed a smart contract, there have not been transfers of cryptocurrency in daily tranches to Cortana's Trust Wallet as specified in the Payment Protocol. Indeed, there have been no payments at all to Cortana by Defendants PMC and Jalloh in USDT (ERC20) or any other cryptocurrency with liquid value.[3]

On January 13, 2026, counsel for Cortana notified counsel for Defendants PMC and Jalloh that they intended to file a motion to enforce the agreed upon settlement on January 14, 2026, if Cortana did not receive an immediate transfer of liquid USDT. As of this filing, Cortana has receive no such transfers.

## ARGUMENT

It is well established that federal courts have the authority to enforce settlement agreements entered into by litigants in cases before them. *Samra v. Shaheen Business and Investment Group, Inc.*, 355 F.Supp.2d 483, 493 (D.D.C. 2005) (citing *Autera v. Robinson*, 419 F.2d 1197, 1200, 1200 n. 9 (D.C. Cir. 1969) (collecting cases from various federal circuits)). An action to enforce a settlement agreement is, at bottom, an action seeking the equitable remedy of specific performance of a contract. *Samra*, 355 F.Supp.2d at 493 (citing *Quijano v. Eagle Maintenance Servs., Inc.,* 952 F.Supp. 1, 3 (D.D.C. 1997)). The party moving for enforcement of a settlement agreement bears the burden of showing, by clear and convincing evidence, that the parties in fact formed a binding agreement in resolution of all the disputed issues in the underlying litigation. *Id.* In most cases, a district court can enforce a settlement agreement

---

[2] A smart contract is a computer program or a transactional protocol that is intended to automatically execute, control or document events and actions according to the terms of a contract or an agreement. Smart contracts are commonly associated with cryptocurrencies.

[3] On January 9, 2026, Defendants PMC and Jalloh initiated a transfer of a purported $81,330.05 worth of USDT.z to Cortana's Trust Wallet, which was not the form of cryptocurrency agreed upon. The USDT.z was determined to be illiquid and was transferred back to Defidants PMC and Jalloh by Cortana.

summarily. *Samra*, 355 F.Supp.2d at 493 (citing *Autera v. Robinson*, 419 F.2d 1197, 1200 (D.C. Cir. 1969)). Summary enforcement of settlement agreements is a remedy that serves well the policy favoring compromise. *Autera*, 419 F.2d at 1200. The summary procedure is well-suited to situations where a binding settlement bargain is conceded or shown, and the excuse for nonperformance is comparatively unsubstantial. *Id.* This jurisdiction commends the summary practice for use in connection with problems capable of precise resolution without attendant hazard to the interests of the parties. *Id.*

Further, "clear and convincing evidence, does not mean "undisputed" or "undisputable" evidence, but only requires that the party bearing the burden of proof on a given issue present evidence sufficient to allow the court to "reach a firm conviction of truth on the evidence about which [it] is certain." *Samra*, 355 F.Supp.2d at 493 (quoting *United States v. Montague*, 40 F.3d 1251, 1255 (D.C. Cir. 1994)). In this jurisdiction, "[w]hether parties have reached a valid settlement is a question of contract law." *Samra*, 355 F.Supp.2d at 494 (quoting *United States v. Mahoney*, 247 F.3d 279, 285 (D.C. Cir. 2001)). Under the Settlement Agreement and Amended Settlement Agreement, the governing law for any disputes, claims, actions, suits or other proceedings arising out of the agreement was specified as the substantive law of the District of Columbia. *See* Exhibit 1; *see also* Exhibit 2. Under D.C. case law, a Court should not inquire beyond contractual terms unless the language of the agreement is ambiguous. *Dyer v. Bilaal*, 983 A.2d 349, 361 (D.C. 2009) (citing *Akassy v. William Penn Apartments Ltd.*, 891 A.2d 291, 303 (D.C. 2006)). Absent ambiguity, written contracts are enforced according to their terms. *Dyer*, 983 A.2d at 361 (citing *Sutton v. Banner Life Ins. Co.*, 686 A.2d 1045, 1048 (D.C. 1996)). A contract is "not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its

meaning depends. *Dyer*, 983 A.2d at 361 (quoting *Burbridge v. Howard Univ.*, 305 A.2d 245, 247 (D.C. 1973)).

Here, Cortana and Defendants PMC and Jalloh knowingly and voluntarily agreed to all of the essential terms of their settlement, which agreement culminated in their mutual execution of the fully integrated Settlement Agreement and Amended Settlement Agreement. The terms of the Settlement Agreement are clear and unambiguous. Cortana is entitled to the equivalent total of $8,123,093.05 from Defendants PMC and Jalloh. Summary enforcement of this settlement agreement is appropriate under the circumstances and given the binding written agreements. There is simply no valid reason for the nonperformance of Defendants PMC and Jalloh.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Cortana respectfully requests that the Court summarily enforce the Amended Settlement Agreement, together with such other and further relief as the Court deems just and proper.

Dated: January 30, 2026                                     Respectfully submitted,

**FOLEY & LARDNER LLP**

By: */s/ Olivia S. Singelmann*
                    Counsel

Olivia S. Singelmann (D.C. Bar No. 1016299)
Telephone: (202) 295-4146
Jack Korba (D.C. Bar No. 1010303)
Telephone: (202) 295-4110
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007

*Attorneys for Plaintiff Cortana Global LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th of January 2026, a true and correct copy of the foregoing document was served via email through counsel or otherwise.

By: /s/ Olivia S. Singelmann
Counsel for Plaintiff